UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

NATHAN HAWKINS,                          )
                                         )
            Petitioner,                  )
                                         )
      v.                                 )            No.  4:04CV1269 SNL
                                         )                        (TIA)
DONALD ROPER,                            )
                                         )
            Respondent.                  )

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This cause is before the Court on Missouri state prisoner Nathan Hawkins' pro se petition for

writ of habeas corpus pursuant to 28 U.S.C. § 2254 (filed September 17, 2004/Docket No. 2).  All

pretrial matters were referred to the undersigned United States Magistrate Judge pursuant to 28

U.S.C. § 636(b).

On August 16, 1999, Petitioner was convicted by a jury in the Circuit Court of Monroe

County, Missouri, of one count of murder in the first degree and one count of armed criminal action.

(Resp. Exh. B at 73-74).   On September 16, 1999, the circuit court sentenced Petitioner to

consecutive terms of life imprisonment without the possibility of probation or parole.  (Resp. Exh.

B at 79-80).  Petitioner appealed the judgment, and on March 20, 2001, Petitioner's conviction and

sentence were affirmed on direct appeal by the Missouri Court of Appeals.  (Resp. Exh. G).  On that

same day, the Missouri Court of Appeals issued an order withdrawing the opinion and taking the case

under submission.  (Resp. Exh. H; State v. Hawkins, 2001 WL 267315 (Mo. Ct. App. 2000)).  The

Missouri Court of Appeals issued a new opinion on April 3, 2001.  (Resp. Exh. H; State v. Hawkins,

58 S.W.3d 12 (Mo. Ct. App. 2000)).  The Missouri Court of Appeals denied Petitioner's Motion for

Rehearing and/or Transfer to the Supreme Court on May 24, 2001. (Resp. Exh. I; Hawkins, 58 S.W.3d at 12). The Missouri Supreme Court granted transfer on June 26, 2001. (Resp. Exhs. I and J; Hawkins, 58 S.W.3d at 12). After briefing and argument, the Missouri Supreme Court retransferred the case back to the Missouri Court of Appeals on October 23, 2001. (Resp. Exhs. K, L, M, and N). On November 5, 2001, the Missouri Court of Appeals entered an order readopting the opinion of April 3, 2001. (Resp. Exh. O).

On January 17, 2002, Petitioner filed a pro se Motion to Vacate, Set Aside or Correct the Judgment or Sentence under Missouri Supreme Court Rule 29.15. (Resp. Exh. R at 3-33). On April 17, 2002, Petitioner's appointed counsel filed an Amended Motion. (Resp. Exh. R at 34-51). The post-conviction relief court dismissed Petitioner's post-conviction motion after an evidentiary hearing on September 23, 2002. (Resp. Exh. R at 52-58). On August 12, 2003, the Missouri Court of Appeals affirmed the dismissal of Petitioner's post-conviction relief. (Resp. Exh. V; Hawkins v. State, 116 S.W.3d 660 (Mo. Ct. App. 2003)). On September 24, 2003, the Missouri Court of Appeals denied Petitioner's Motion for Rehearing and/or Transfer to the Missouri Supreme Court. (Resp. Exh. W; Hawkins, 116 S.W.3d at 660). On August 30, 2004, Petitioner filed a Motion to Reopen his Post-Conviction Relief Proceeding, and the circuit court denied the motion. The Missouri Court of Appeals affirmed the judgment denying his motion to reopen his post-conviction proceeding on August 30, 2005. (Hawkins v. State, 178 S.W.3d 564 (Mo. Ct. App. 2005)). On October 11, 2005, the Missouri Court of Appeals denied Petitioner's Motion for Rehearing and/or Transfer to the Missouri Supreme Court. (Hawkins, 178 S.W.3d at 564). The Missouri Supreme Court denied Petitioner's Application for Transfer on December 20, 2005. (Hawkins v. State, 178 S.W.3d at 564). Petitioner pursued no other action for review of his convictions and sentence in state court. The

instant petition for writ of habeas corpus, signed by Petitioner on September 14, 2004, and received

by this Court on September 17, 2004, was filed September 17, 2004, upon Petitioner being granted

leave to proceed in this cause in forma pauperis.

Petitioner is currently incarcerated at the Jefferson City Correctional Center in Jefferson City,

Missouri, pursuant to the sentence and judgment of the Circuit Court of Monroe County.   In the

instant petition for writ of habeas corpus, Petitioner raises eight grounds for relief:

(1)     That the trial court plainly erred in giving Instruction Numbers five and six, the verdict directors for murder in the first degree and murder in the second degree, because the instructions failed to conform with MAI-CR3d;

(2)     That the trial court erred by overruling Petitioner's motion to suppress evidence, his statements, and objections regarding the seizure of 9mm shell casings and rap lyrics from his trailer during the search;

(3)     That the trial court erred in admitting over objection State Exhibit 4, an autopsy photograph of Eric Cooper's head after brain surgery, and State Exhibits 9, 10, 11, 12, 13, and 14, photographs of the interior of the car showing blood splatters and brain matter;

(4)     That the trial court erred in overruling Petitioner's objection and in permitting the prosecuting attorney to introduce and read State Exhibits 28 and 29, the rap lyrics found during the search of Petitioner's trailer;

(5)     That Petitioner received ineffective assistance of counsel in that trial counsel failed to object to the verdict directors, or alternatively, failed to submit properly drafted verdict directors;

(6)     That Petitioner received ineffective assistance of counsel in that trial counsel failed to submit an instruction on voluntary manslaughter inasmuch as the verdict director for murder in the second degree contained a paragraph requiring the jury to find that Petitioner had not acted under the influence of sudden passion arising from adequate cause;

(7)     That the Rule 29.15 post-conviction court erred in denying his post-conviction relief because he was denied effective assistance of trial counsel by his failure to object to the verdict directors; and

(8)     That the Rule 29.15 post-conviction court erred in denying his post-conviction relief because he was denied effective assistance of trial counsel by his failure to offer an instruction on involuntary manslaughter.

In response, Respondent contends that Petitioner has exhausted his claims inasmuch as they have been properly raised in the state courts, or because Petitioner has no available non-futile state remedies by which he could present these claims.

## I.     Non-Cognizable Claims

Federal habeas relief is available to a state prisoner only on the ground that he is in custody in violation of a constitutional or federal statutory right.  Williams-Bey v. Trickey, 894 F.2d 314, 317 (8th Cir. 1990); 28 U.S.C. § 2254(a).  Claims that do not reach constitutional magnitude cannot be addressed in a petition for writ of habeas corpus.  Carter v. Armontrout, 929 F.2d 1294, 1296 (8th Cir. 1991).

In his second ground for relief, Petitioner claims that the trial court erred in denying his motion to suppress physical evidence and post-arrest statements under the Fourth Amendment because the affidavit supporting the search warrant was insufficient, thus resulting in the statements being "fruit of the poisonous tree."

A state prisoner is precluded from asserting a Fourth Amendment claim as a basis for federal habeas relief unless the petitioner can demonstrate that the state courts have not afforded the petitioner a full and fair opportunity to litigate the claim.  Stone v. Powell, 428 U.S. 465, 494 (1976); Willett v. Lockhart, 37 F.3d 1265, 1270 (8th Cir. 1994) (en banc); Cortis v. Kenney, 995 F.2d 838, 841 (8th Cir. 1993).  The Eighth Circuit has set forth a two-part test to determine whether a habeas petitioner has had an opportunity for a full and fair litigation of a Fourth Amendment claim in state courts. Willett, 37 F.3d at 1273.  A Fourth Amendment claim is barred from federal habeas review under

Stone v. Powell, unless: 1) the State provided no procedure by which the petitioner could raise his Fourth Amendment claim, or 2) the petitioner was foreclosed from using that procedure because of an unconscionable breakdown in the system. Willett, 37 F.3d at 1273.

The first prong of the Willett test is satisfied in that the State of Missouri has a procedure by which petitioner could raise his Fourth Amendment claim. Id. at 1272 (Eighth Circuit unaware of any state that does not have such procedure). As to the second prong, there is no evidence before the undersigned to show that an unconscionable breakdown in the system prevented Petitioner from raising the claim. A review of the record shows that the State provided Petitioner with avenues by which to present Fourth Amendment claims, and he took advantage of these opportunities to present such claims. Prior to trial Petitioner filed motions to suppress in which he sought to suppress evidence, statements, and identification obtained as a result of the search of his home pursuant to an allegedly improperly issued search warrant. (Resp. Exh. B at 10-17, 29-36). Specifically, Petitioner challenged the affidavit supporting the search warrant for being based on third-hand hearsay and providing no basis for ascertaining the sources' veracity and basis of knowledge; the warrant not authorizing the seizure of rap lyrics; and his statements being obtained as a direct result of the illegal search. (Resp. Exh. B at 29-36). An evidentiary hearing was held on the motions at which evidence was adduced, and the trial court subsequently overruled Petitioner's pretrial motions to suppress evidence and statements. (Resp. Exh. C). Petitioner challenged the court's ruling on direct appeal, and the Missouri Court of Appeals opined the issuing judge had a substantial basis for concluding probable cause existed to support the search warrant. State v. Hawkins, 58 S.W.3d 12, 23 (Mo. Ct. App. 2001). Likewise, the court of appeals determined that the police officers executing the search warrant were lawfully in Petitioner's home and the rap lyrics on the refrigerator were in plain view,

and thus the officers could have reasonably believed there was probable cause that the rap lyrics were connected to the crime based on lyrics containing extensive profanity and referencing intentional killing and use of guns. Id.

Inasmuch as Petitioner has failed to demonstrate that the state courts have not afforded him a full and fair opportunity to litigate his Fourth Amendment claims, the claims raised in Ground 2 of the instant petition are not cognizable in this habeas proceeding and should be denied.

To the extent Petitioner claims in his petition that the post-conviction motion court erred in denying his post-conviction relief because he received ineffective assistance of trial counsel by his failure to object to the verdict directors, and by his failure to offer an instruction on involuntary manslaughter, such claims are not cognizable in a federal habeas proceeding. "Section 2254 only authorizes federal courts to review the constitutionality of a state criminal conviction, not infirmities in a state post-conviction relief proceeding." Williams-Bey v. Trickey, 894 F.2d 314, 317 (8th Cir. 1990).

> Errors or defects in the state post-conviction proceeding do not, ipso facto, render a prisoner's detention unlawful or raise constitutional questions cognizable in habeas corpus proceedings. Habeas corpus in the federal courts does not serve as an additional appeal from state court convictions. Even where there may be some error in state post-conviction proceedings, this would not entitle appellant to federal habeas corpus relief since appellant's claim here represents an attack on a proceeding collateral to detention of appellant and not on the detention itself.

Williams v. State of Missouri, 640 F.2d 140, 143-44 (8th Cir. 1981).

Petitioner claims that the post-conviction motion court erred when it denied him post-conviction relief because he received ineffective assistance of trial counsel by his failure to object to the verdict directors, and by his failure to offer an instruction on involuntary manslaughter, are not cognizable in a federal habeas proceeding. As such, the claims raised in Grounds 7 and 8 of the instant

petition are not cognizable in this federal habeas proceeding and should be denied.

## II.      Cognizable Claims

Petitioner's remaining claims appear to state claims that he is in custody in violation of his constitutional rights. Such claims are cognizable and thus may be addressed by this Court.

Section 2254(d)(1) requires federal habeas courts to test the determination of state courts "only against 'clearly established Federal law, as determined by the Supreme Court of the United States,'" and prohibits the issuance of a writ of habeas corpus "unless the state court's decision is 'contrary to, or involved an unreasonable application of,' that clearly established law." Williams v. Taylor, 529 U.S. 362, 379 (2000). The federal law must be clearly established at the time petitioner's state conviction became final, and the source of doctrine for such law is limited to the United States Supreme Court. Id., 529 U.S. at 380-83.

A state court's decision is "contrary to" clearly established law if "it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme Court] but reaches a different result." Brown v. Payton, 125 S.Ct. 1432, 1438 (2005). A decision involves an "unreasonable application" of clearly established law if "the state court applies [the Supreme Court's] precedents to the facts in an objectively unreasonable manner." Id. at 1439; Williams, 529 U.S. at 405. "Federal habeas relief is warranted only when the refusal was 'objectively unreasonable,' not when it was merely erroneous or incorrect." Carter v. Kemna, 255 F.3d 589, 592 (8th Cir. 2001) (quoting Williams, 529 U.S. at 410-11).

As an initial matter, the undersigned notes that the Missouri Court of Appeals summarized the facts regarding the issue on appeal:

> The State charged Defendant with first degree murder and armed criminal action in the shooting death of Eric Cooper by a handgun on or about November 10, 1998. Defendant does not challenge the sufficiency of the evidence. In summary, Defendant fired one shot while Cooper was in the front passenger seat of a parked vehicle outside Defendant's home. Cooper died from a bullet wound to the head.
>
> During trial, the State introduced an autopsy photograph of Cooper and five photographs of the inside of the vehicle after the shooting. The State also introduced at trial 9mm shell casings taken from Defendant's home during execution of a search warrant, rap lyrics that were taken off the refrigerator in Defendant's home during execution of a search warrant, and certain statements Defendant made after his arrest. The trial court gave verdict directing instructions for first degree murder, second degree murder, and armed criminal action with respect to both of those murder offenses, as well as a separate self-defense instruction. The jury convicted Defendant of first degree murder and armed criminal action, and recommended sentences of life imprisonment without parole and life imprisonment, respectively. The trial court subsequently overruled Defendant's motion for new trial and post-trial motion for judgment notwithstanding the verdict, and sentenced Defendant to consecutive terms of life without parole and life. This appeal followed.

(Resp. Exh. H at 1-2; State v. Hawkins, 58 S.W.3d 12, 16(Mo. Ct. App. 2001)). Inasmuch as Petitioner does not rebut these factual findings by clear and convincing evidence, they are presumed to be correct. 28 U.S.C. § 2254(e)(1).

**A.     Claims Addressed on the Merits**

**1.     Ground 1**

In Ground 1of the instant petition, Petitioner claims that the trial court plainly erred in giving Instruction Numbers five and six, the verdict directors for murder in the first degree and murder in the second degree, because the instructions failed to conform with MAI-CR3d by cross-referencing his self-defense instruction. Petitioner further contends that the second-degree murder verdict director required the jury to find that he had not acted under the influence of sudden passion arising from

- 8 -

adequate cause.

Petitioner raised these claims on direct appeal of his conviction. (Resp. Exh. E at 15-22). The Missouri Court of Appeals denied Petitioner's claims exercising its discretion to review his claims for plain error finding that the claims had not been properly preserved for appellate review because Petitioner did not object to the instructions during trial or in his motion for new trial. (Resp. Exh. H at 2-9; Hawkins, 58 S.W.3d at 16-20). On direct appeal, the Missouri Court of Appeals recognized that Petitioner failed to show manifest injustice from the trial court's rulings regarding the instructions. In relevant part, the Missouri Court of Appeals opined as follows:

> In his first point on appeal, Defendant urges that the trial court erred in giving the verdict directing instructions for murder in the first degree and murder in the second degree. Specifically, Defendant points to (1) the failure of those instructions to cross-reference the self-defense instruction, and (2) the inclusion in the second degree murder verdict director of 'sudden passion' language, specifically paragraph Third of Instruction No. 6. in the absence of a voluntary manslaughter instruction. As Defendant did not object to the instructions during trial or in his motion for new trial as required by Rule 28.03, he now seeks plain error review under Rule 30.20.

\*\*\*

> Our discretion to reverse a conviction on the basis of plain error should be used sparingly. Instructional error seldom rises to the level of plain error. A defendant must go beyond a mere demonstration of prejudice and establish that the instructional error affected the jury's verdict.

> In reviewing Defendant's claim that neither verdict director cross-referenced the self-defense instruction that was given, we look at the two verdict directors.

> Instruction No. 5, the first degree murder verdict director stated:

> As to Count I, if you find and believe from the evidence beyond a reasonable doubt:
> First, that on or about November 10, 1998, in the County of Monroe, State of Missouri, the defendant caused the death of Eric Cooper by shooting him with a handgun, and
> Second, that defendant knew that his conduct was practically certain

to cause the death of Eric Cooper, and

Third, that defendant did so after deliberation, which means cool reflection upon the matter for any length of time no matter how brief, then you will find the defendant guilty under Count I of murder in the first degree.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of murder in the first degree.

If you do find the defendant guilty under Count I of murder in the first degree, you are to assess and declare the punishment at imprisonment for life without eligibility for probation or parole.

Instruction No. 6, the second degree murder verdict director, stated:

As to Count I, if you do not find the defendant guilty of murder in the first degree, you must consider whether he is guilty of murder in the second degree.

As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about November 10, 1998, in the County of Monroe, State of Missouri, the defendant caused the death of Eric Cooper by shooting him with a handgun, and

Second, that defendant knew that his conduct was practically certain to cause the death of Eric Cooper, and

Third, that defendant did not do so under the influence of sudden passion arising from adequate cause,

then you will find the defendant guilty under Count I of murder in the second degree.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of murder in the second degree.

As used in this instruction, the term 'sudden passion' means passion directly caused by and arising out of provocation by Eric Cooper which passion arose at the time of the offense and was not solely the result of former provocation. The term 'adequate cause' means cause that would reasonably produce a degree of passion in a person of ordinary temperament sufficient to substantially impair an ordinary person's capacity for self-control.

If you do find the defendant guilty under Count I of murder in the second degree, you will assess and declare one of the following punishments:

1. Life imprisonment
2. Imprisonment for a term of years fixed by you, but not less than ten

years and not to exceed thirty years.

The failure to include in a verdict director a cross-reference to a separate defense instruction, as required by MAI Notes on Use, may constitute reversible error when the error is properly preserved. The absence from a verdict director of an explicit cross-reference to a separate defense instruction, however, has not been viewed as plain error.

In *Dunlap* the defendant was found guilty, as charged, of each of two counts of assault. The verdict directing instructions failed to include a cross-reference to the intoxication defense instruction. We noted that the Notes on Use for the pattern intoxication defense instruction stated that if that defense instruction was given "'the verdict directing instruction must contain a paragraph cross-referencing to'" it. After considering 'the instructions as a whole' and the closing argument of defense counsel, we concluded that no manifest injustice resulted from the omission of the required cross-reference. Specifically, we concluded that defense counsel had made numerous references to 'defendant's drugged condition,' including a clear reference to instruction language requiring the jury to find defendant not guilty if the jury found he was in such a drugged condition that he did not know what he was doing.

In *Cooksey*, the defendant was convicted of one of the two charged offenses. The Western District found that the absence from verdict directing instructions of cross-references to an affirmative defense instruction was not plain error, although it did not violate Rule 28.02(f) and the Notes on Use for the relevant pattern affirmative defense instruction, entitled "Justification: Emergency Measures.' Specifically, the court noted that the Notes on Use for that instruction stated "'there will be a cross reference in the verdict director'" if the affirmative defense instruction is given. The Western District concluded that the transcript showed the jury was aware of the affirmative defense instruction through the closing arguments of both attorneys; defendant had failed to show that the jury either was unaware of the affirmative defense instruction or failed to use it in deliberating; and defendant had not convincingly demonstrated prejudice sufficient to reverse under plain error standard.

As in those cases, we find no plain error here in the omission from the verdict directing instructions of cross-references to the separate self-defense instruction given to the jury. No one questions that the evidence supported a self-defense instruction. The self-defense instruction given in this case was modeled after MAI-CR3d 306.06, entitled "Justification: Use of Force in Self-Defense.' The Notes on Use for that instruction provide in relevant part that the instruction 'must be given' when evidence supports the defense and '[a] paragraph making a cross-reference to this instruction will be added to the verdict director' as specified. While lack of a cross-reference in the verdict directors does not comply with the pattern self-defense instruction's Notes on Use, the attorneys in this case clearly referred to the jury to and discussed self-

defense during their closing arguments, including making specific references to the self-defense instruction. After reviewing the instructions as a whole and the closing arguments, we conclude, as in *Dunlap*, that there was no manifest injustice or miscarriage of justice in the omission from the verdict directors of a cross-reference to the separate defense instruction. Additionally, as the Western District found in *Cooksey*, we find that the record reveals the jury was aware of the self-defense instruction through counsel's closing arguments, and Defendant has failed to show that the jury either was unaware of or failed to use the self-defense instruction during its deliberations.

Defendant next argues that the trial court plainly erred in giving Instruction No. 6, the second degree murder verdict director that included the phrase 'did not do so under the influence of sudden passion,' without giving an instruction on voluntary manslaughter. Defendant claims that the 'sudden passion' language confused the jury and caused the jury to convict him of the higher offense of first degree murder.

The inclusion of 'sudden passion' language in a second degree murder instruction 'is used to justify the giving of a voluntary manslaughter instruction.' That is, the second degree murder instruction must include 'sudden passion' language when there is evidence supporting a finding that the defendant caused the death of the victim under the influence of sudden passion arising from adequate cause. The trial court here, however, was not asked to and did not instruct on voluntary manslaughter.

Defendant asserts that the jurors could have been confused by the usage of the 'sudden passion' language in the instruction as no mention of those words had been made before by either counsel. In their closing arguments, the prosecutor referred to the crime as either 'a cold-blooded crime' or 'a hot-blooded crime ... [or] a spontaneous thing,' and defense counsel asked the jury how it could determine that 'this [was] not a hot-blooded crime.'

In the absence of a voluntary manslaughter instruction, Defendant contends the jurors could have construed the term 'cold-blooded' as synonymous with first degree murder, and 'hot-blooded' as synonymous with second degree murder. Moreover, the jurors could have considered the term 'sudden passion' as a more legally correct way of saying 'hot-blooded.' Thus, Defendant argues, the jury could have concluded that the third paragraph of Instruction No. 6 should have read, 'Third, that defendant *did* so under the influence of sudden passion arising from adequate cause.'

Defendant claims that the jurors' confusion is evidenced by the fact that, during deliberations, the jury sent the trial court a note saying: 'Please clarify on instruction 6 part 3, is the DID NOT DO SO the correct verbage [sic] describing second degree murder? Does the word not belong in this statement?' The jury also sent out Instruction No. 6 with paragraph Third circled, the 'did not do so' portion of that

paragraph underlined, and a question mark placed in the left margin next to the circled paragraph.

After consulting with counsel, the trial court responded to the jury's note, stating: 'You must be guided by the instructions previously given by the Court.' Neither party objected to the court's response.

The State argues that we should not consider error in the second degree murder verdict director because Defendant was convicted of first degree murder, a greater offense. This argument is based on the general rule that conviction of a higher degree of a crime renders any error in an instruction on a lower degree of the crime not prejudicial, unless the error prevents a conviction of the lesser crime.

We find that the 'sudden passion' language contained in Instruction No. 6 did not prevent the jury from convicting Defendant of second degree murder. The instruction correctly stated the elements of second degree murder and correctly stated the law that Defendant 'did not do so under the influence of sudden passion.' The existence of 'sudden passion' would convert what would normally be second degree murder into voluntary manslaughter instead.

Although the jury questioned the wording of the instruction in light of the remarks made during closing arguments and in the absence of a voluntary manslaughter instruction, nothing prevented a conviction of second degree murder. When the jury expressed its concerns, the court, without objection by either party, instructed the jurors to follow the instructions as given. Assuming the jurors did so, the 'sudden passion' language would not have prevented a conviction of murder in the second degree. Under a plain error standard of review, Defendant has shown no manifest injustice or miscarriage of justice. Point denied.

(Resp. Exh. H at 2-9; Hawkins, 58 S.W.3d 16-20) (internal citations and footnote omitted).

The state court's rejection of Petitioner's claims constituted adjudication on the merits of the claims and must be reviewed under the deferential provisions of 28 U.S.C. § 2254(d)(1). Section 2254(d)(1) requires federal habeas courts to test the findings of state courts only against clearly established federal law, as determined by the Supreme Court of the United States. Further, § 2254(d)(1) prohibits the issuance of a writ of habeas corpus unless the state court's decision is contrary to, or involved an unreasonable application of that clearly established law. Williams v.

Taylor, 529 U.S. 362, 379 (2000).  The federal law must be clearly established at the time Petitioner's state conviction became final, and the source of doctrine for such law is limited to the United States Supreme Court.  Id. at 380-83.

A state court's decision is contrary to clearly established Supreme Court precedent when it is opposite to the Court's conclusion on a question of law or different than the Court's conclusion on a set of materially indistinguishable facts.  Williams, 529 U.S. at 412-13; Carter v. Kemna, 255 F.3d 589, 591 (8th Cir. 2001).  A state court's determination is an unreasonable application of Supreme Court precedent if it unreasonably refuses to extend a legal principle to a new context where it should apply.  Carter, 255 F.3d at 592 (citing Williams, 529 U.S. at 407).  "Federal habeas relief is warranted only when the refusal was 'objectively unreasonable,' not when it was merely erroneous or incorrect."  Id. (quoting Williams, 529 U.S. at 410-11).

At the time Petitioner's conviction became final, the law was clearly established that in a criminal trial, the State must prove every element of the offense, and a jury instruction violates due process if it fails to give effect to that requirement.  See Sandstrom v. Montana, 442 U.S. 510, 520-21 (1979).  Nonetheless, not every deficiency in a jury instruction rises to the level of a due process violation.  The question, rather, is "'whether the ailing instruction ... so infected the entire trial that the resulting conviction violates due process.'"  Estelle v. McGuire, 502 U.S. 62, 72 (1991) (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)).  "'[A] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.'"  Boyde v. California, 494 U.S. 370, 378 (1990) (quoting Cupp, 414 U.S. at 146-47).  If the charge as a whole is ambiguous, the question is whether there is a "'reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution."  Estelle, 502 U.S. at 72 (quoting Boyde, 494 U.S.

at 380). The fact that an instruction is allegedly incorrect under state law is not a basis for habeas relief. Id. at 71-72.

The undersigned must determine whether the instructions as given violated Petitioner's right to due process. Estelle, 502 U.S. at 71-72. "[E]ven if the failure to give [a] self-defense instruction were a violation of state law, habeas relief could only be granted if the failure to instruct the jury on self-defense amounted to 'a fundamental defect which inherently results in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure.'" Crump v. Caspari, 116 F.3d 326, 327 (8th Cir. 1997) (citations omitted). For the reasons stated above, the instructions, when viewed as a whole, instructed the jury to find Petitioner not guilty unless the State proved beyond a reasonable doubt that Petitioner did not act in self-defense. Further, Petitioner's counsel argued self-defense to the jury and made specific references to the self-defense instruction during closing argument, and the prosecutor discussed self-defense in his closing argument. (Resp. Exh. A 333-39, 347-55, 356-57). Upon review of the entire charge to the jury and the record as a whole, the jury was aware that self-defense was a major issue in the case through counsel's closing arguments despite the omission of the cross-reference and thus no manifest injustice resulted from the omission.

With regard to the inclusion of "sudden passion" language in the second degree murder verdict director, the undersigned finds that there is no reasonable likelihood, on the evidence adduced at trial, that the jury applied the instructions in a way that violated the Constitution or which resulted in a conviction which violated Petitioner's right to due process. Because Petitioner is unable to show that the language rendered his trial fundamentally unfair, he is not entitled to relief.

Based on the above, the decision of the state court in denying Petitioner relief on his claims

- 15 -

of instructional error was not "substantially different" from what the decision would have been if that court had used the appropriate legal standards established by the United States Supreme Court. Nor was the state court unreasonable in its determination to deny Petitioner relief of these claims of instructional error. The claims raised in Ground 1 of the instant petition should therefore be denied. 28 U.S.C. §2254(d).

    2.    **<u>Ground 3</u>**

In Ground 3of the instant petition, Petitioner claims that  the trial court erred in admitting over objection State Exhibit 4, an autopsy photograph of Eric Cooper's head after brain surgery, and State Exhibits 9, 10, 11, 12, 13, and 14, photographs of the interior of the car showing blood splatters and brain matter. Petitioner argues that the admission of the photographs was unnecessary to prove the location of the wound and that the prejudicial effect of the grisly photographs outweighed any probative value.

Petitioner raised these claims on direct appeal of his conviction. (Resp. Exh. E at 31-34). The Missouri Court of Appeals denied Petitioner's claims for relief. (Resp. Exh. H at 15-17; <u>Hawkins</u>, 58 S.W.3d at 23-25). Specifically, the Missouri Court of Appeals found the gruesome nature of the photographs did not  preclude their admission into evidence in light of the circumstances of the crime. In relevant part, the Missouri Court of Appeals opined as follows:

> For his third point, Defendant argues the trial court erred and abused its discretion in admitting into evidence an autopsy photograph of the victim's head, and five photographs of the interior of the car where the shooting occurred, which showed blood spatters and brain matter. Defendant contends a model could have been used rather than the autopsy photograph, which was gory, showed the results of surgery rather than the location of the wound, and was unnecessary to establish the location of the wound. With respect to the five pictures of the automobile, Defendant urges they had no probative value because there was no dispute the victim was shot while in the car and the State did not lay a proper foundation for an officer's testimony about

the blood and brain matter depicted.

Defendant pursued his objections to the admission of these photographs during trial and in his post-trial motion.

The trial court has broad discretion in the admission of photographs. We may find error in the admission or exclusion of evidence only when the trial court's broad discretion is clearly abused. An abuse of discretion exists when the trial court ruling 'clearly offends the logic of the circumstance or appears arbitrary and unreasonable.'

'Photographs are relevant if they show the scene of the crime, ... the nature and extent of the wounds, the cause of death, [and] the condition and location of the body.' Additionally, photographs may be admitted to corroborate or refute testimony, and to help the jury to better understand testimony. A relevant photograph is not admissible because other evidence describes what is shown in the photograph or because it may be inflammatory. Nor must the State forego admission of a photograph because '"the defendant expresses a willingness to stipulate to some of the issues involved."' '[A] photograph should not be excluded from evidence unless its prejudicial effect is greater than its probative value. Usually, if a photograph is shocking or gruesome, it is because the crime was shocking or gruesome.

In a homicide prosecution, pictures of the head of the victim who was shot in the head are admissible. In *Rousan*, the Missouri Supreme Court found a picture depicting a gunshot wound to the victim's head was properly admitted in that it showed the injuries sustained by the victim and aided the jury in understanding the pathologist's testimony. In *Wilhite*, we determined the admission of photographs of the homicide victim's head, which depicted bullet entry wounds, was not an abuse of the trial court's broad discretion. The photographs were used to show the nature and location of wounds, and were referred to by a witness 'in explaining his testimony about the cause of death and the nature of the wounds.'

Here, the picture of the victim's head was admitted during the testimony of the medical examiner to indicate the location of the bullet wound. The examiner had testified the picture would help explain the entry wound. The other five challenged exhibits were introduced during the testimony of a sergeant with the Missouri State Highway Patrol who helped with the investigation of the shooting. These pictures depict blood splatters and human tissue on and around the front passenger side door, floorboard, and window of the car where Cooper was during the shooting. These exhibits helped the sergeant describe the crime scene and assisted the jury in understanding the sergeant's testimony.

Defendant has not convinced us the probative value of the challenged photographs was outweighed by any prejudicial effect they may have had. The

photographs helped the medical examiner and an investigator with their testimony and assisted the jury in understanding that testimony, including the nature and location of the wound. Neither the fact Defendant did not dispute the victim was shot in the head while sitting in a parked vehicle, nor the fact other evidence established at least some of what is depicted in the photographs, prohibits the admission of the photographs. Nor does the fact the photographs may be gruesome, preclude their admission into evidence in light of the circumstances of the crime. The admission of these pictures was not a clear abuse of the trial court's broad discretion.

(Resp. Exh. H at 15-17; Hawkins, 58 S.W.3d at 23-25) (internal citations omitted).

At the time Petitioner's conviction became final, the law was clearly established that the determination as the admission of evidence under state law violates the Due Process Clause of the Fourteenth Amendment only if such determination fatally infects the trial so as to render the trial fundamentally unfair. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Lisenba v. California, 314 U.S. 219, 236 (1941). The issue of the admissibility of evidence is a state law question. Estelle, 502 U.S. at 67-68; Rousan v. Roper, 436 F.3d 951, 958 (8th Cir.), cert. denied, 127 S. Ct. 68 (2006). Rulings on the admission or exclusion of evidence in state trials rarely rise to the level of a federal constitutional violation. Nebinger v. Ault, 208 F.3d 695, 697 (8th Cir. 2000). "A federal issue is raised only where trial errors infringe on a specific constitutional protection or are so prejudicial as to amount to a denial of due process." Bucklew v. Luebbers, 436 F.3d 1010, 1018 (8th Cir.), cert. denied, 127 S. Ct. 725 (2006). "The [applicant] must show that the alleged improprieties were so egregious that they fatally infected the proceedings and rendered his entire trial fundamentally unfair." Rousan, 436 F.3d at 958-59 (quotation omitted).

In Missouri, whether the probative value outweighs the prejudicial effect of proffered evidence is a question on which a trial court has wide latitude. State v. Swigert, 852 S.W.2d 158, 163 (Mo. Ct. App. 1993). The United States Supreme Court has emphasized that "it is not the province of a

federal habeas court to reexamine state-court determinations on state-law questions." Estelle, 502 U.S. at 67. For an alleged evidentiary error to have violated Petitioner's constitutional rights, Petitioner "must show a reasonable probability that the error affected the trial's outcome," Richardson v. Bowersox, 188 F.3d 973, 980 (8th Cir. 1999) (internal quotation marks and citations omitted), that is, whether there is a reasonable probability that the verdict might have been different had the error not occurred. Harris v. Bowersox, 184 F.3d 744, 752 (8th Cir. 1999). The federal court must find more than trial error or even plain error to warrant habeas relief on the basis of evidentiary questions. McCafferty v. Leapley, 944 F.2d 445, 452 (8th Cir. 1991). Therefore, the undersigned is limited to addressing whether petitioner's constitutional rights were violated by admission of the evidence. Rainer v. Department of Corrs., 914 F.2d 1067, 1072 (8th Cir. 1990). The inquiry is not whether the trial court erred in admitting the particular testimony, but whether the admission resulted in a trial so fundamentally unfair as to deny petitioner due process of law. Id. For the following reasons, a review of the entire trial process here shows the admission of the photographs in question not to have rendered Petitioner's trial fundamentally unfair, and Petitioner's claim that he was denied a fair trial must fail.

The undersigned concludes under the totality of the circumstances that the admission of the photographs was necessary for this case, because the photographs provided context to the testimony of the medical examiner regarding the location of the bullet wound and the entry wound. Likewise, the other five challenged photographs helped the crime scene investigator describe the crime scene and assisted the jury in understanding his testimony. See Rousan v. Roper, 436 F.3d 951, 959 (8th Cir. 2006) (seven photographs of the two victims' severely decomposed bodies were probative and assisted the State's proof). Further, in light of the totality of the evidence adduced at trial, the admission of

the photographs did not fatally infect the proceedings "because '[th] jury's finding ... clearly rests on the substantial factual basis, even absent the photographic evidence in controversy here[.]'" Id. at 959 (quoting Kuntzelman v. Black, 774 F.2d 291, 292-93 (8th Cir. 1985) (per curiam)). The admission of the photographs did not result in a trial so fundamentally unfair as to deny Petitioner due process of law.

Based on the above, the state court's determination to deny Petitioner relief on his claims of evidentiary error was neither contrary to, nor involved an unreasonable application of clearly established federal law. Williams, 529 U.S. at 391. Nor has Petitioner shown that the court's determination "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). As such, the claim raised in Ground three of the instant petition for writ of habeas corpus should therefore be denied. 28 U.S.C. §2254(d).

**3.    Ground 4**

In Ground 4 of the instant petition, Petitioner claims that the trial court erred in overruling Petitioner's objection and in permitting the prosecuting attorney to introduce and read State Exhibits 28 and 29, the rap lyrics found during the search of Petitioner's trailer. The lyrics read in relevant part as follows:

> You tried to fuck with my riches, that's why yo ass got took out. I kicked in yo doe nigga with my thing in your mouth cause we handle out business nigga from way down south and if you ain't about it nigga you less seen then a rain valley drout because the deer niggas ain't playing when they run over you with a strap and ain't no talkin bullshit nigga down south we don't play around like that.

> We come fully equipped with AK's, Tec-9's and Mac 11's. I hope you prayed the night before cause you on a quick trip to heaven and if you think I'm playing nigga with this game that I spit I'll take your life nigga and be at your crip fuckin you bitch.

So if you do now shit yet you don't fuck with the nigga riches or you'll end up in a pine box right along with those snitches riches, riches nigga what riches, you can't fuck with my riches.

(Resp. Exh. A2 at 292-93).

Petitioner raised these claims on direct appeal of his conviction. (Resp. Exh. E at 35-37). The Missouri Court of Appeals denied Petitioner's claim finding that the rap lyrics were properly introduced to contradict Petitioner's testimony regarding his peaceful nature. (Resp. Exh. H at 17-19; Hawkins, 58 S.W.3d at 25-26). On direct appeal, the Missouri Court of Appeals recognized that once a defendant takes the stand and testifies in his own behalf, the defendant is subject to contradiction and impeachment just like any other witness. (Resp. Exh. H at 17-18; Hawkins, 58 S.W.3d at 25-26). In relevant part, the Missouri Court of Appeals opined as follows:

In his fourth point, Defendant urges the trial court erred and abused its discretion in allowing the introduction and reading of the rap lyrics found on his refrigerator during the search of his home. Defendant urges the lyrics were irrelevant and prejudicial due to 'their profane and violent content.' Defendant objected to the introduction and reading of the rap lyrics both at trial and in his post-trial motion.

We find error in the admission or exclusion of evidence only when the trial court clearly abuses its broad discretion. A trial court abuses its discretion when its ruling 'clearly offends the logic of the circumstance or appears arbitrary and unreasonable.

The defendant's reputation as a peaceable person is relevant in a murder trial. When a defendant takes the stand to testify in his own behalf, he is subject to contradiction and impeachment just like any other witness.

Defendant took the stand and testified on his own behalf during trial. During direct examination, Defendant explained that fighting was 'not the way' he normally resolved 'static or tension.' On cross-examination, Defendant acknowledged that, before the shooting, he left his home to visit Cooper at a neighbor's trailer to 'make peace' with Cooper because 'that's the way' Defendant was. He wanted to make it better if someone was not getting along with him. He also testified "Fighting's not the way to solve things.' Immediately after that testimony, the State sought to introduce the rap lyrics to contradict Defendant's statements reflecting that he was a peaceful

- 21 -

person, because the lyrics 'respresent[ed] a certain violent attitude toward life.' The trial court admitted the lyrics, over Defendant's objection, and permitted the prosecutor to read them to the jury. Under these circumstances, the lyrics were properly introduced to contradict Defendant's testimony regarding his peaceful nature.

\*\*\*\*\*

Even if the admission of the lyrics was erroneous, their admission did not constitute reversible error. We 'reverse only if the error [in admitting the evidence] was so prejudicial that it deprived the defendant of a fair trial.' In light of the evidence available to the jury, we conclude the admission of the rap lyrics did not deprive Defendant of a fair trial.

The record reveals that Defendant admitted in his post-arrest statements and trial testimony that he shot Cooper. The evidence further indicates Cooper was shot after walking out of Defendant's neighbor's trailer where an argument regarding a prior incident with Cooper arose. Instead of leaving the area, going to his trailer home next door, or staying inside the neighbor's trailer until after Cooper left, Defendant went toward Cooper and shot him once in the head with a handgun as Cooper was trying to leave. Point four denied.

(Resp. Exh. H at 17-19; Hawkins, 58 S.W.3d at 25-26) (internal citations omitted).

At the time Petitioner's conviction became final, the law was clearly established that the presentation of evidence in a state criminal action is not reviewable in a federal habeas proceeding unless a specific constitutional right has been infringed or the evidence is so prejudicial as to deny due process. Henderson v. Norris, 118 F.3d 1283, 1286 (8th Cir. 1997). If evidence introduced at trial "is so-unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief." Payne v. Tennessee, 501 U.S. 808, 825 (1991). The relevant question is whether admission of the challenged evidence "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1994).

The issue of the admissibility of evidence is a state law question. Estelle v. McGuire, 502 U.S.

62, 67-68 (1991). Rulings on the admission or exclusion of evidence in state trials rarely rise to the level of a federal constitutional violation. Nebinger v. Ault, 208 F.3d 695, 697 (8th Cir. 2000). This Court may only review state evidentiary issues when "'the asserted error infringed a specific constitutional protection or was so prejudicial as to deny due process.'" Griffin v. Delo, 33 F.3d 895, 904 (8th Cir. 1994) (quoting Wallace v. Lockhart, 701 F.2d 719, 724 (8th Cir. 1983)). Only the exclusion of critical, reliable and highly probative evidence will violate due process. Nebinger, 208 F.3d at 697. In state court criminal cases the Fourteenth Amendment leaves the admissibility of other crimes evidence to be determined by the state courts under state court law. Lisenba v. California, 314 U.S. 219, 227-28 (1941). Because questions concerning the admission of evidence at trial are matters of state law, review of such questions in a federal habeas corpus proceeding is limited to determining whether the petitioner's constitutional rights have been violated. Rainer v. Department of Corrections, 914 F.2d 1067, 1072 (8th Cir. 1990). Petitioner must show that the error "was so 'gross', 'conspicuously prejudicial', or otherwise of such magnitude that it fatally infected the trial," Mercer v. Armontrout, 844 F.2d 582, 587 (8th Cir. 1987), to the extent "that there is a reasonable probability that the error complained of affected the outcome of the trial - i.e., that absent the alleged impropriety, the verdict would have been different." Carter v. Armontrout, 929 F.2d 1294, 1296 (8th Cir. 1991). "No due process violation exists for the admission of prior bad acts testimony unless it can be said that the testimony was 'so conspicuously prejudicial or of such magnitude that it fatally infected the trial and deprived [defendant] of fundamental fairness.'" McDaniel v. Lockhart, 961 F.2d 1358, 1360 (8th Cir. 1992) (quoting Hobbs v. Lockhart, 791 F.2d 125, 128 (8th Cir. 1986)). In conducting its review the undersigned must examine the totality of the facts in the case and the fairness of the trial as a whole. Hobbs v. Lockhart, 791 F.2d 125, 128 (8th Cir. 1996).

After careful review of the record, the undersigned can find no specific constitutional protection that was violated or how the admission of the rap lyrics challenged by Petitioner so prejudiced him as to deny him due process. Petitioner testified at trail on his own behalf. (Resp. Exh. A2 at 194-295). During direct examination and cross examination, Petitioner explained how fighting is not how he resolved static or tension, and on the night of the murder, he wanted to make peace with the victim because that was his mode of proceeding. (Resp. A2 at 205, 272, 289-93). At trial, the State explained his purpose in admitting the rap lyrics to show Petitioner's "violent attitude toward life, if you will, which is in contradiction to the statements he just made about being a peace-loving person, not that kind of guy, wanting to get along with folks, knowing that violence is not the way. These contradict that." (Resp. A2 at 289-90).

The evidence complained of here, namely the rap lyrics, was admitted to contradict Petitioner's testimony asserting that he is a peaceful person. (Resp. Exh. A2 at 289-93). Defense counsel objected, but the trial court permitted the State to read the rap lyrics to the jury. (Resp. A2 at 292-93). As noted by the Missouri Court of Appeals, Petitioner admitted in his post-arrest statements and trial testimony that he shot Cooper. Thus, it cannot be said that the evidence was such that it would have caused the outcome of the trial to be different. For the above reasons, it cannot be said that the state court's adjudication of the instant claim "resulted in a decision that was contrary to, or involved an unreasonable application of," such clearly established federal law. 28 U.S.C. § 2254(d)(1). Neither has petitioner shown that the court's determination "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). As such, the instant claim should be denied.

4.      **Ground 5**

In Ground 5 of the instant petition, Petitioner claims that he received ineffective assistance of trial counsel in that counsel failed to object to the verdict directors, or alternatively, failed to submit properly drafted verdict directors. On appeal of the denial of post-conviction relief, the Missouri Court of Appeals summarily denied Petitioner's claim.

Petitioner raised this claim in his motion for post-conviction relief and on appeal of the denial of the motion. Upon review of merits of this claim, the Missouri Court of Appeals denied Petitioner relief. (Resp. Exh. V; Hawkins v. State, 116 S.W. 3d 660 (Mo. Ct. App. 2003)). For the reasons set forth below, the undersigned finds that Petitioner's claim for relief lacks merit.

The undersigned notes that on appeal of the denial of the post-conviction motion, the Missouri Court of Appeals affirmed the judgment denying Petitioner's Rule 29.15 motion in a cursory manner finding that no jurisprudential purpose would be served by an extended opinion. (Resp. Exh. V; Hawkins, 116 S.W.3d 660). This Court is therefore without the benefit of any extended analysis by which the Missouri Court of Appeals made its determination that Petitioner was not entitled to relief on any of the claims properly brought before it. However, as opined by the Missouri Court of Appeals, the motion court entered "comprehensive" Findings of Fact and Conclusions of Law when denying Petitioner's amended post-conviction relief motion. (Resp. Exhs. R at 52-58 and V; Hawkins, 116 S.W.3d 660). Habeas relief may be granted only if the decision of the state court is "substantially different" from what the decision would have been if that court had used the appropriate legal standard as established by the United States Supreme Court. Huss v. Graves, 252 F.3d 952, 956 (8th Cir. 2001) (quoting Williams, 529 U.S. at 405). The state court need not cite or even be aware of the governing Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2002) (per curiam). As such, this Court

must apply such established Supreme Court precedent to the facts of this case to determine whether Petitioner is entitled to relief on any of his claims.

A review of the record shows that Petitioner raised this claim of ineffective assistance of trial counsel in his motion for post-conviction relief and on appeal of the denial of the motion. (Resp. Exh R at 11-13; Resp. Exh. T at 16-23). After a review of the merits of the claim, the motion court denied Petitioner relief. (Resp. Exh. R at 53-55, 57-58). For the reasons set forth below, the undersigned finds that Petitioner's claim for relief lacks merit.

In his post-conviction motion and on appeal, Petitioner claimed that he received ineffective assistance of counsel in that trial counsel failed to object to the trial court's giving of verdict directors, instructions five and six, neither of which cross-referenced his self-defense instruction. Upon review of the claim, the motion court noted in its written decision that

> 11. Movant's first claim is that trial counsel was ineffective for its failure to object to verdict directors that failed to cross reference the self-defense instruction, or alternatively to submit a properly cross-referenced instruction. There is no question that the instruction was not properly cross-referenced in the manner required by the MAI-CR3d. However, this issue was specifically considered for plain error on direct appeal.

> a. The Appellate court determined that the failure to cross-reference the instructions did not result in manifest injustice or miscarriage of justice; specifically finding that the attorney in the case repeatedly referred the jury to the self-defense instruction and discussed the ramifications of self-defense during their closing arguments. The court further found that the record revealed that the jury was aware of the self-defense instruction through counsel's closing arguments, and defendant failed to show that the jury either was unaware of or failed to use the self-defense instruction during its deliberations.

> b. Prior to the holding of Deck v. State, 68 S.W.3d 418 (Mo. Banc 2002), an instructional error such as this would not be an appropriate subject for ineffective assistance of counsel. Morrow v. State, 21 S.W.3d 819, 829 (Mo. Banc 2000). In Deck, the Missouri Supreme Court overruled a long line of cases and held that a determination of no 'plain error' involving an instruction on direct appeal does

not automatically preclude the re-litigation of that claim in a Rule 29.15 proceeding because the standard for obtaining relief on direct appeal as 'plain error' is more stringent than the 'prejudice' standard under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). However, the Deck court stressed that, as Strickland notes, the 'theoretical difference in the two standards of review will seldom cause a court to grant post-conviction relief after it has denied relief on direct appeal, for, in most cases, an error that is not outcome-determinative on direct appeal will also fail to meet the Strickland test.'

   c. In view of these considerations and my review of the record of trial, the Court finds that self-defense, its supporting instruction, and the ramifications of a finding of self-defense was extensively and accurately explained to the jury at trial by both counsel. Consistent with the appellate court's conclusion, there is no showing that the jury was confused about the effects of a self-defense finding or failed to properly consider it. Accordingly, the Court finds no reasonable probability of a different result if the instruction had been properly cross-referenced, and this claim is denied.

(Resp. Exh. R at 54-55).

At the time Petitioner's conviction became final, the law was clearly established that in order to obtain relief under the Sixth Amendment for ineffective assistance of counsel, a petitioner must show that counsel's performance was both deficient and prejudicial. See Strickland v. Washington, 466 U.S. 668, 687 (1984). The crucial issue is whether the petitioner suffered material prejudice due to counsel's alleged deficient performance. Witherspoon v. Purkett, 210 F.3d 901, 903 (8th Cir. 2000). In order to show prejudice, Petitioner must establish that there is reasonable probability that but for trial counsel's unprofessional errors, the result of Petitioner's trial would have been different. Strickland, 466 U.S. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. In evaluating the probability of a different result, the court must consider the totality of the evidence. Id., 466 U.S. at 695. Rather than second-guessing counsel's actions with the benefit of hindsight, the reviewing court must examine counsel's decisions with a high degree of deference. Id., 466 U.S. at 689; White v. Helling, 194 F.3d 937, 941 (8th Cir. 1999) (the

court "must resist the temptation to use hindsight to require that counsel's performance have been perfect. Only reasonable competence, the sort expected of the 'ordinary fallible lawyer' ... is demanded by the Sixth Amendment") (internal citation omitted). The petitioner bears a heavy burden in overcoming "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. "Reasonable trial strategy does not constitute ineffective assistance of counsel simply because it is not successful." James v. Iowa, 100 F.3d 586, 590 (8th Cir. 1996). Furthermore, even if Petitioner show counsel's performance was deficient, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Strickland, 466 U.S. at 691.

In the instant claim of ineffective assistance of counsel, Petitioner specifically contends that he received ineffective assistance of trial counsel in that counsel failed to object to the verdict directors, or alternatively, failed to submit properly drafted verdict directors. In addressing the claim, the motion court determined Petitioner not to have shown a reasonable probability of a different result if the self-defense instruction had been properly cross-referenced. For the following reasons, this decision was neither contrary to, nor involved an unreasonable application of clearly established federal law, and Petitioner's claim will be denied.

In the findings section, the movant court opined that "[a]lthough the failure to cross-reference the self-defense instruction in the verdict director was an erroneous omission, there is no reasonable probability that the omission affected the result of the trial." (Resp. Exh. R at 57). The record demonstrates that the trial attorneys clearly referred the jury to and discussed self-defense during their closing arguments, including making specific references to the self-defense instruction. (Resp. Exh. A1 at 333-39; 347-55; 356-57). Further as opined by the motion court, there is no showing on the

record that the jury was confused about the effects of a self-defense finding or failed to properly consider it. Furthermore, the motion court concluded that there was no reasonable probability of a different result if the self-defense instruction has been properly cross-referenced. These findings are fairly supported by the record and this Court finds no basis for departing from that analysis.

The state court's rejection of Petitioner's claim constituted adjudication on the merits of the claim and must be reviewed under the deferential provisions of 28 U.S.C. § 2254(d)(1). Section 2254(d)(1) requires federal habeas courts to test the findings of state courts only against clearly established federal law, as determined by the Supreme Court of the United States. Further, § 2254(d)(1) prohibits the issuance of a writ of habeas corpus unless the state court's decision is contrary to, or involved an unreasonable application of that clearly established law. Williams v. Taylor, 529 U.S. 362, 379 (2000). The federal law must be clearly established at the time Petitioner's state conviction became final, and the source of doctrine for such law is limited to the United States Supreme Court. Id. at 380-83.

A state court's decision is contrary to clearly established Supreme Court precedent when it is opposite to the Court's conclusion on a question of law or different than the Court's conclusion on a set of materially indistinguishable facts. Williams, 529 U.S. at 412-13; Carter v. Kemna, 255 F.3d 589, 591 (8th Cir. 2001). A state court's determination is an unreasonable application of Supreme Court precedent if it unreasonably refuses to extend a legal principle to a new context where it should apply. Carter, 255 F.3d at 592 (citing Williams, 529 U.S. at 407). "Federal habeas relief is warranted only when the refusal was 'objectively unreasonable,' not when it was merely erroneous or incorrect." Id. (quoting Williams, 529 U.S. at 410-11).

In the instant cause, the motion court articulated the Strickland standard of review (Resp. Exh.

R at 53-54) and found Petitioner not to have shown prejudice by counsel's conduct inasmuch as, regardless of the failure to cross-reference the instructions, the attorneys nevertheless repeatedly referred to the self-defense instruction and discussed the ramifications of self-defense during closing arguments. Such determination was not contrary to, and did not involve an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d)(1).

Based on the above, the state court's decision denying Petitioner relief is well based on law and fact. This Court is unaware of any "clearly established Federal law, as determined by the Supreme Court of the United States" of which the court's decision runs afoul, nor has Petitioner demonstrated such. Therefore, it cannot be said that the state court's adjudication of the instant claims "resulted in a decision that was contrary to, or involved an unreasonable application of," clearly established federal law. 28 U.S.C. §2254(d)(1). Neither has Petitioner shown that the court's determination "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). As such, the instant claim should be denied. 28 U.S.C. §2254(d).

## 5.   Ground 6

In Ground 6 of the instant petition, Petitioner claims that he received ineffective assistance of counsel in that trial counsel failed to submit an instruction on voluntary manslaughter inasmuch as the verdict director for murder in the second degree contained a paragraph requiring the jury to find that Petitioner had not acted under the influence of sudden passion arising from adequate cause. On appeal of the denial of post-conviction relief, the Missouri Court of Appeals summarily denied Petitioner's claim.

A review of the record shows that Petitioner raised this claim of ineffective assistance of trial counsel in his motion for post-conviction relief and on appeal of the denial of the motion. (Resp. Exh. R at 16-18; Exh. T at 24-30). After a review of the merits of the claim. the motion court denied Petitioner relief. (Resp. Exh. R at 55-57). Upon review of merits of this claim, the Missouri Court of Appeals denied Petitioner relief in a cursory manner finding that no jurisprudential purpose would be served by an extended opinion. (Resp. Exh. V; Hawkins, 116 S.W.3d 660). This Court is therefore without the benefit of any extended analysis by which the Missouri Court of Appeals made its determination that Petitioner was not entitled to relief on any of the claims properly brought before it. However, as opined by the Missouri Court of Appeals, the motion court entered "comprehensive" Findings of Fact and Conclusions of Law when denying Petitioner's amended post-conviction relief motion. (Resp. Exhs. R at 52-58 and V; Hawkins, 116 S.W.3d 660). As such, this Court must apply such established Supreme Court precedent to the facts of this case to determine whether Petitioner is entitled to relief on any of his claims.. (Resp. Exh. V; Hawkins v. State, 116 S.W. 3d 660 (Mo. Ct. App. 2003)). For the reasons set forth below, the undersigned finds that Petitioner's claim for relief lacks merit.

In his post-conviction motion and on appeal, Petitioner claimed that he received ineffective assistance of counsel in that trial counsel failed to submit an instruction on voluntary manslaughter inasmuch as the verdict director for murder in the second degree contained a paragraph requiring the jury to find that Petitioner had not acted under the influence of sudden passion arising from adequate cause. Upon review of the claim, the motion court denied Petitioner's claim of ineffective assistance of counsel in its written decision finding counsel's decision not to request a voluntary manslaughter decision to constitute reasonable trial strategy:

12. Movant's second claim focuses on the failure to submit an instruction on voluntary manslaughter, or in the alternative, failure to argue that if the jury found evidence of sudden passion it must acquit.

a. At trial, the state submitted an instruction for second degree murder, Instruction No. 6. which included a third paragraph requiring the jury to find that Movant had not acted under the influence of sudden passion *arising from adequate cause*. Although this is a correct statement of the law, the Notes to MAI-CR3d 313.04 states that this paragraph should only be used if a voluntary manslaughter instruction is given. The record does not reflect that Movant's counsel ever requested a voluntary manslaughter instruction, and the decision not to do so was consistent with counsel's strategy, stated at the evidentiary hearing, of 'all or nothing.' Counsel's stated strategy, reflected in his closing argument, focused almost exclusively on getting his client acquitted because of self-defense, and as he stated at the hearing, he expected to do so. Counsel also stated that this strategy was with the consent of his client, which is further reflected in Movant's statement of satisfaction regarding the performance of his attorney at sentencing.

b. Actions by counsel that constitute sound trial strategy are not grounds for ineffective assistance of counsel claims. Although ultimately unsuccessful, it cannot be said that the strategy of movant's trial counsel to focus only on acquittal as a result of self-defense and not instruct down to voluntary manslaughter, was clearly defective. In the absence of a voluntary manslaughter instruction, the jury would have had no option but to acquit if they had found that victim's death was as result of 'sudden passion arising from adequate cause.' However, specifically arguing that this was a crime of sudden passion arising from adequate cause would have been inconsistent with the Movant's self-defense theory of the case.

c. Even if counsel's strategy was arguably defective, it has not been demonstrated that the strategy adversely affected the outcome of the trial. An issue closely related to the one now before the Court - the question of whether or not the inclusion of the third paragraph in the Second Degree Murder Instruction constituted plain error -- was previously submitted to the Appellate Court on direct appeal. The court found no plain error, noting the general rule that a conviction of a higher degree of a crime renders any error in an instruction on a lower degree of the crime not prejudicial, unless the error prevents a conviction of the lesser crime. The appellate court determined that nothing prevented Movant's conviction of second degree murder by the jury; consequently there was no manifest injustice or miscarriage of justice when the Court returned a first degree murder finding.

d. Although Movant now offers a slightly different argument from that

dealt with on direct appeal in the current case, the rationale of <u>Kinnard</u> is still valid: Movant's jury unanimously determined that the State met all of the necessary elements for First Degree Murder, to specifically include deliberation ("cool reflection"). By specifically rejecting Movant's self-defense argument and by finding the Movant deliberated, the jury apparently concluded that this was not a spontaneous or passionate crime at all. Consequently, the question of whether there was some 'adequate cause' for that passion never became an issue for this jury. ('Adequate cause' is a crucial part of the basis for instructing down to voluntary manslaughter, however, it was consistently omitted in Movant's amended motion, which focused only on the 'sudden passion' aspect of voluntary manslaughter). In view of this, the court concludes that Movant's trial attorney was not ineffective for his 'all or nothing' strategy even if it was not ultimately successful. Movant has offered nothing beyond speculation to suggest that his suggested strategies of either including a voluntary manslaughter instruction or arguing for acquittal based on manslaughter-consistent facts (sudden passion based on adequate cause) would have yielded a different result.

(Resp. Exh. R at 55-57) (internal citations omitted).

At the time Petitioner's conviction became final, the law was clearly established that the Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. <u>Strickland v. Washington</u>, 466 U.S. 668, 686 (1984). To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show that 1) his counsel's performance was deficient, and 2) the deficient performance prejudiced his defense. <u>Id.</u> at 687. In evaluating counsel's performance, the basis inquiry is "whether counsel's assistance was reasonable considering all the circumstances." <u>Id.</u> at 688. The petitioner bears a heavy burden in overcoming "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Id.</u> at 689. Indeed, a strong presumption exists that counsel's conduct "might be considered sound trial strategy." <u>Id.</u> (internal quotation marks and citation omitted). Decisions relating to trial strategy are "virtually unchallengeable." <u>Id.</u> at 690. To establish prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u> at 694.

In the instant cause, the motion court articulated the Strickland standard of review. (Resp. Exh. R at 64-65) and found counsel's decision not to seek a voluntary manslaughter instruction to be reasonable trial strategy and not to have prejudiced Petitioner. In the findings section, the movant court opined that "[w]ith respect to trial attorney's decision not to seek a voluntary manslaughter instruction or in the alternative, argue for acquittal if the jury found evidence of sudden passion arising from adequate cause, the Court finds a valid strategic basis for the decision which was consistent with the desires of Movant, and further finds that there is no reasonable probability that the course of action now offered by Movant as a superior strategy would have yielded a different result." (Resp. Exh. R at 57-58). In the circumstances here, it was reasonable for counsel as a matter of trial strategy to focus on acquittal as a result of self-defense and not instruct down to voluntary manslaughter inasmuch arguing that this was a crime of sudden passion arising from adequate cause would have been inconsistent with his self-defense theory of the case. See United States v. Washington, 198 F.3d 721, 723-24 (8th Cir. 1999) (strategic decisions left to counsel include all trial decisions other than the decision to plead guilty, waiving a jury trial, testifying on one's own behalf, and taking an appeal). This conduct was reasonable. See Strickland, 466 U.S. at 689-90 (court must evaluate counsel's conduct from counsel's perspective at the time). Further as determined by the motion court, there is no showing on the record that counsel's strategy adversely affected the outcome of the trial. Likewise, the motion court opined that Petitioner failed to demonstrate prejudice by counsel's conduct. Such determination was not contrary to, nor involved an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d)(1).

The state court's rejection of Petitioner's claim constituted adjudication on the merits of the claim and must be reviewed under the deferential provisions of 28 U.S.C. § 2254(d)(1). Section

2254(d)(1) requires federal habeas courts to test the findings of state courts only against clearly established federal law, as determined by the Supreme Court of the United States. Further, § 2254(d)(1) prohibits the issuance of a writ of habeas corpus unless the state court's decision is contrary to, or involved an unreasonable application of that clearly established law. Williams v. Taylor, 529 U.S. 362, 379 (2000). The federal law must be clearly established at the time Petitioner's state conviction became final, and the source of doctrine for such law is limited to the United States Supreme Court. Id. at 380-83.

In its opinion, the motion court set out and applied the Strickland standard for ineffective assistance of counsel and found counsel's challenged conduct relating to his decision not to seek a voluntary manslaughter instruction in the instant cause to constitute reasonable trial strategy, and thus not to rise to the level of ineffective assistance. For the reasons set out above, this decision was well based on law and fact and was not "contrary to, or involved an unreasonable application of," clearly established federal law. 28 U.S.C. § 2254(d)(1). Nor has Petitioner shown that the court's determination "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). As such, the claim raised in Ground 6 of the instant petition should be denied. 28 U.S.C. § 2254(d). Therefore, for all of the foregoing reasons,

**IT IS HEREBY RECOMMENDED** that Petitioner Nathan Hawkins' pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (filed September 17, 2004/Docket No. 2) be dismissed without further proceedings.

The parties are advised that they have eleven (11) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for

good cause is obtained.  Failure to timely file objections may result in a waiver of the right to appeal questions of fact.  <u>Thompson v. Nix</u>, 897 F.2d 356, 357 (8th Cir. 1990).

Dated this  13th  day of August, 2007.

/s/ Terry I. Adelman
UNITED STATES MAGISTRATE JUDGE